COMMERCIAL BANK OF KENTUCKY, Respondent, v. JOSEPH B.
VARNUM, Appellant.

A bill of exchange drawn in one State upon a person or corporation resi-
dent in another is a foreign bill.

The rule of law requiring protest of a foreign bill of exchange is wholly
founded upon the custom of merchants; and in an action against a
notary for neglect to make presentment and demand, evidence that it is
the common and universal usage at the place where the bill was payable
for notaries' clerks to make such presentment and demand, and that the
bill in question was presented and demand of payment made by the clerk
of the defendant, is proper and admissible. A knowledge, on the part
of plaintiff, of this usage is not necessary to its validity.

The act of 1857 (chapter 416, Laws of 1857), in relation to commercial
paper, only abolishes grace upon bills which are, "*on their face*, payable
on a specified day, or in any number of days, or sight thereof after the
date." It does not include bills payable upon their face in months or
years.

A notary is not presumed to be a lawyer who is to revise or reverse the
decision of his employer as to the character of a bill, and as to whether
it is entitled to days of grace or not. If, therefore, a bill is delivered to
him with directions to make demand and protest upon the wrong day,
a right of action does not arise against him on account of the error.

(Argued April 9th, 1872 ; decided April 30th, 1872.)

APPEAL from judgment of the General Term of the
Supreme Court in the first judicial department, affirming a
judgment in favor of plaintiff entered upon the decision of
the court upon trial at circuit without a jury. (Reported
below, 3 Lans., 86.)

The action is brought against defendant as notary public
for alleged neglect in presenting, demanding payment and
protesting a bill of exchange.

Defendant was a notary public in the city of New York
and was the duly appointed notary of the Metropolitan Bank
in said city, and employed by it to transact all the business
of said bank in protesting commercial paper requiring the
employment of a notary.

On or about the 4th day of September, 1860, W. H. Barkes-
dale & Co., a firm doing business in St. Louis, Missouri, drew

their draft, dated at St. Louis, upon the Park Bank, New York, for the sum of $10,000, payable to the order of John F. Darby, four months after date. Darby indorsed the draft and it was discounted by plaintiff. The plaintiff sent the draft, indorsed by its president, to the Metropolitan Bank, of the city of New York, for collection.

On the 5th of January, 1861, the Metropolitan Bank delivered the draft to defendant for demand and protest.

The defendant was at that time in partnership "in the law and notarial business" with P. W. Turney, and the firm were attorneys of the Metropolitan Bank. Mr. Turney was also a notary public. Mr. Turney took the draft in question, which he presented at the Park Bank and demanded payment; payment was refused.

On the same or the next day the defendant made out a certificate of protest and notices for the drawers and indorsers and sent the same by mail to plaintiff, at Paducah, to Barkesdale & Co., at St. Louis, and sent the notice for Darby and a duplicate for the drawers to plaintiff at Paducah.

The draft and protest were returned to the Metropolitan Bank, and on the seventh day of January the cashier of that bank mailed the same to the plaintiff at Paducah.

The plaintiff failed to notify the indorser, Darby, till about or nearly a month after the date of the notice sent to plaintiff, when it sent that notice to Darby through Barkesdale & Co.

Barkesdale & Co., the drawers, were insolvent in January, 1861, but Darby, the indorser, was solvent. The plaintiff brought suit in the Common Pleas, St. Louis, and was beaten, but on what ground does not appear.

Evidence was given on the trial to establish the custom, in New York, to present such bills by clerks of notaries and protest the same on such presentation. This evidence was stricken out and excluded by the court under defendant's exception.

The defendant's counsel also offered to prove a universal usage and custom in the city of New York, among all persons connected with or transacting business with bankers or banks

therein, and with notaries public therein, to protest all foreign bills of exchange, drafts, etc., upon the presentment and demand of payment by a clerk or agent of the notary employed for that purpose. The court refused to receive the evidence, and defendant's counsel excepted.

The court held, in substance, that the instrument delivered to defendant by the Metropolitan Bank was a foreign bill of exchange ; that it must have been personally presented and demanded by defendant and protested by him ; that the acts of Turney, as notary, did not amount to a valid protest by him, and that Turney's presentment and demand of the bill, as defendant's clerk or agent, did not warrant defendant in making his protest ; that under the provision of the statute (3 R. S., 5 ed., § 37) declaring a notary liable, for *misconduct* in office, to any party injured thereby, the plaintiff was at liberty to sue defendant directly for its injury ; that defendant was guilty of misconduct, within the meaning of the statute, in not presenting and demanding the bill in person. The defendant duly excepted.

*Noah Davis* for the appellant. Plaintiff's remedy is against the Metropolitan Bank only, not against defendant. (*Allen* v. *The Merchants' Bank*, 22 Wend., 215 ; *The Montgomery Co. Bank* v. *Albany City Bank*, 3 Seld., 459 ; *The Commercial Bank of Pennsylvania* v. *The Union Bank*, 1 Kern., 311 ; *Denny* v. *The Manhattan Bank*, 2 Denio, 115 ; S. C. in error, 5 Denio, 369 ; *Hoard* v. *Garner*, 3 Sandf., S. C., 179 ; *Armstrong* v. *Garrow*, 6 Cow., 465 ; *Gorham* v. *Gale*, 6 id., 467 ; *Corning* v. *Southland*, 3 Hill, 552 ; *Walters* v. *Sykes*, 22 Wend., 566 ; *Mickles* v. *Hart*, 548 ; *Yates* v. *Brown*, 8 Pickens, 23 ; *Bunoy* v. *Donaldson*, 4 Dod., 206 ; *Williamson* v. *Pierce*, 16 Martin, 399 ; *Cameron* v. *Reynolds*, Cowp., 403 ; *Downer* v. *Madison Co. Bank*, 6 Hill, 548 ; *Calvin* v. *Holbrook*, 2 Com., 126 ; *Denny* v. *Manhattan Co.*, 2 Den., 218.) Defendant is not chargeable with misconduct. (*Turnbull* v. *Martin*, 37 How., 20 ; *Smith* v. *Cutler*, 10 Wend., 589 ; 24 Barb., 149 ; 9 John., 212 ; 13 East, 357 ; 1 J. Ch.,

101; *Ex parte Garland*, 4 Wall., 333; 22 Barb., 595; 6 Met., 26; *Gilbert* v. *Williams*, 8 Mass., 57; *Chapman* v. *Walton*, 10 Bing., 57; *Levninch* v. *Meigs*, 1 Cow., 645; *Lease* v. *Freuben*, 1 East., 348.) The presentation and demand were lawful and sufficient, and protest regular. (*Cowperthwaite* v. *Sheffield*, 1 Sand., 449; 3 Cow., 243; *Bank of Rochester* v. *Gray*, 2 Hill, 227; Brookes' Notary, 97, 100; Chitty on Bills, 477; Story on Bills, § 302; *Chartres* v. *Bell*, 4 Esp., 48; *Orr* v. *Maginnis*, 7 East.; *Rogers* v. *Stevens*, 2 Term, 713; *Robbins* v. *Gibson*, 1 Maule & S., 271; *Cayuga Co. Bank* v. *Hunt*, 2 Hill., 635; *Bailey* v. *Dozier*, 6 How. U. S., 23; 17 id., 606; Byles on Bills, 203, 204; *Halliday* v. *Martinett*, 20 Johns., 168; *Sheldon* v. *Benham*, 4 Hill, 131; *Poole* v. *Decas*, 1 Scott, Com. Pleas, 600; id., 1 Bing. N. C., Com. Pleas, 649; *Sutton* v. *Gregory*, 2 Reapes' N. P., 150; *Geralopulo* v. *Weiler*, 1 Scott, C. B., 690.) A foreign bill of exchange need not be presented and demanded by a notary in person. (Brookes' Notary, 530; 3 Kent's Com., 93, 94; Chitty, pp. 364, 365; *Bank of Rochester* v. *Gray*, 2 Hill, 227; *Wilkins* v. *Jadis*, 2 B. & A., 188; *Ganutt* v. *Woodcock*, 1 Stark., Ni. Pri., 475; A. M. & S., 44; *Triggs* v. *Newman*, 1 C. & P., 613; 10 Moore, 249; *Philpott* v. *Bryant*, 3 C. & P., 244; *Poole* v. *Dicas*, 1 Bing., 649; *Sulton* v. *Gregory*, 2 Peake N. P., 150; *Nelson* v. *Follerd*, 7 Leigh, 179; *Saendor* v. *Brown*, 2 McLean, 243; *McClure* v. *Fitch*, 4 B. Monroe; *Cribbs* v. *Adams*, 13 Gray, 597; *Chermowith* v. *Chamberlain*, 6 B. Monroe, 61.). Proof of usage was admissible. (*Mills* v. *Bank of U. S.*, 11 Wheat., 421; *Bank of W.* v. *Triplett*, 1 Pet., 25; *Hinton* v. *Lock*, 5 Hill, 437; *Outwater* v. *Nelson*, 20 Barb., 29; *Wadsworth* v. *Alcott*, 6 N. Y., 64.) A statute in derogation of the common law is to be strictly construed. (Coke Inst., 282; 6 L., 3, § 485; *Bushing* v. *Bushnell*, 6 Hill, 382; *Benjamin* v. *Benjamin*, 1 Seld., 383; *People* v. *Hadden*, 3 Denio, 220; *Rue* v. *Alter*, 5 Denio, 119; *Portwardens* v. *Cadwright*, 4 Sanf., 236; *White* v. *Wager*, 25 N. Y., 328; *Winans* v. *Peebles*, 32 N. Y.; *Seymour* v. *Judd*, 2 Comst., 464.) At common law, days of grace are part of the contracts.

(*Bank of W.* v. *Triplett*, 1 Pet., 25.) The bill is not a foreign one within the meaning of the law. (*Merchant Miller* v. *Hackley*, 5 Johns., 375; 7 How. U. S., 408–492; 2 Par. on Bills, Appendix, 13.

*Thomas G. Shearman* for the respondent. The bill was a foreign bill of exchange. (*Buckner* v. *Finley*, 2 Pet., 586; *Dickins* v. *Beal*, 10 id., 572, 579; *Bank of U. S.* v. *Daniel*, 12 id., 32, 54; *Phœnix Bank* v. *Hussey*, 12 Pick., 483; *Chenowith* v. *Chamberlin*, 6 B. Monr., 60; *Rice* v. *Hogan*, 8 Dana, 133, 134; *Green* v. *Jackson*, 15 Me., 136; *Freeman's Bank* v. *Perkins*, 18 id., 292; *State Bank* v. *Hayes*, 3 Ind., 400; *Aborn* v. *Bosworth*, 1 R. I., 401; *Commercial Bank* v. *Barksdale*, 36 Mo., 563; *Bank of Cape Fear* v. *Stinemetz*, 1 Hill [S. C.], 44; 3 Kent's Com., 63; *Halliday* v. *McDougall*, 22 Wend., 264, 272; *Carter* v. *Burley*, 9 N. H., 558, 566; *Brown* v. *Ferguson*, 4 Leigh, 37, 51; *Mahony* v. *Ashlin*, 2 B. & A., 478; *Milne* v. *Graham*, 1 B. & C., 192; *Reynolds* v. *Syme*, Fac. Coll., 1774; *Ferguson* v. *Belch*, id., June 17, 1803; Bell's Com., 419.) The notary's protest is sufficient evidence of dishonor of a foreign bill. (*Townsley* v. *Sumval*, 2 Pet., 170; *Bryden* v. *Taylor*, 2 H. & J., 396.) Such a protest is indispensable to charge endorser. (*Chanoine* v. *Fowler*, 3 Wend., 173; *Gale* v. *Walsh*, 5 T. R., 239; *Phœnix Bank* v. *Hussey*, 12 Pick., 483; *Commercial Bank* v. *Barksdale*, 36 Mo., 563; *Union Bank* v. *Hyde*, 6 Wheat., 572.) A notary must *personally* present a bill which he intends to protest. He cannot delegate his authority to a clerk or agent. (*Onondaga Bank* v. *Bates*, 3 Hill, 53; *Hunt* v. *Maybee*, 7 N. Y., 266; *Chenowith* v. *Chamberlin*, 6 B. Monr., 60; *Carmichael* v. *Bank of Penn.*, 4 How. (Miss.), 567; *Sacrider* v. *Brown*, 3 McLean, 481; *Commercial Bank* v. *Barksdale*, 36 Mo., 563; *Cribbs* v. *Adams*, 13 Gray, 597; *Warnick* v. *Crane*, 4 Denio, 460.) The evidence of custom was inadmissible. (*Allen* v. *Merchants' Bank*, 15 Wend., 482; *Edie* v. *East India Co.*, 2 Burr, 1216; *Woodruff* v. *Merchants' Bank*, 25 Wend., 673;

*Bowen* v. *Newell*, 8 N. Y., 180; *United States* v. *Buchanan*, 8 How. [U. S.], 83, 102; *Wheeler* v. *Newbold*, 16 N. Y., 392; *Higgins* v. *Moore*, 34 id., 417; *Beirne* v. *Dord*, 5 id., 102; *Otsego Bank* v. *Warren*, 18 Barb., 290; *Suydam* v. *Clark*, 2 Sandf., 133; *Brown* v. *Jackson*, 2 Wash. C. C., 24; *Coxe* v. *Heislay*, 19 Penn. St., 243.) The usage must be known to the parties. (*Franklin* v. *Smith*, 21 Wend., 624.) The objection that bill was delivered for protest upon the wrong day was not raised upon the trial and cannot be raised here. (*Judd* v. *O'Brien*, 21 N. Y., 186; *N. Y. Central Ins. Co.* v. *National Pro. Ins. Co.*, 14 id., 85; *Barnes* v. *Perine*, 12 id., 18; *Jencks* v. *Smith*, 1 id., 40.) The bill was properly presented on the fifth. (*Salter* v. *Burt*, 20 Wend., 205; *Avery* v. *Sleevin*, 2 Conn., 69.) Plaintiff could not sustain action against the Metropolitan Bank. (*Warren Bank* v. *Suffolk Bank*, 10 Cush., 582; *Bellemire* v. *Bank of United States*, 4 Whart., 105; *Citizens' Bank* v. *Howell*, 8 Maryl., 530; *Tiernan* v. *Commercial Bank*, 7 How. [Miss.], 648; *Baldwin* v. *Bank of Louisiana,*, 1 La. Ann., 13; *Frazier* v. *New Orleans Gas Co.*, 2 Rob. [La.], 294; *Agricultural Bank* v. *Commercial Bank*, 7 Smedes & M., 592; *Ætna Ins. Co.* v. *Alton Bank*, Ill. Sup. Ct.; and see *East Haddam Bank* v. *Scovell*, 12 Conn., 303; *Jackson* v. *Union Bank*, 6 Harr. & J., 146; *Raney* v. *Weed*, 3 Sand., 584.) A public officer, having a ministerial duty to perform, is responsible in damages to any person specially injured by his neglect to perform that duty. (*Adsit* v. *Brady*, 4 Hill, 630; *Robinson* v. *Chamberlain*, 34 N. Y., 389; *Nowell* v. *Wright*, 3 Allen, 166; *Henley* v. *Lyme Regis*, 5 Bing., 91; 1 Bing. N. C., 222; *Clark* v. *Miller*, 47 Barb., 38; *Phillips* v. *Commonwealth*, 44 Penn. St., 197.) It has been expressly adjudged that a notary is liable in such a case as this. (*Bowling* v. *Arthur*, 34 Miss., 41, 52; and see *Franklin* v. *Smith*, 21 Wend., 624.) If the Metropolitan Bank was liable, defendant was also liable. (*Phelps* v. *Wait*, 30 N. Y., 78; *Foster* v. *Preston*, 8 Cow., 198; Story on Agency, §§ 201, 217.)

PECKHAM, J.   It is insisted by defendant's counsel that the presentment and demand of payment of the draft were properly made by a clerk of the defendant, the notary.   This was a foreign bill of exchange, being drawn in the State of Kentucky upon a bank in the city of New York.   This has long been settled by authority.   (*Dickens* v. *Beal*, 10 Peters, 572; *Bk. of U. S.* v. *Daniel*, 12 id., 32; *Phœnix Bk.* v. *Hussey*, 12 Pick., 483; *Buckner* v. *Finlay*, 2 Peters, 586; *Halliday* v. *McDougall*, 20 Wend., 81; *Same Case*, 22 id., 264.) . It being a foreign bill, a protest was indispensable to a recovery against the indorser.   (*Halliday* v. *McDougall*, *supra*, and cases there cited; *Dennistown* v. *Stewart*, 17 How. U. S., 606; *Phœnix Bk.* v. *Hussey*, 12 Pick., 483; 3 Kent's Com., 2d ed., p. 93 and note.) .

Has, then, a notary's clerk any authority to make the presentment and demand of payment of a foreign bill?   This presentment and demand for the purpose of protest are practically of no moment to any one.   Bills are always dishonored before they are handed to a notary to protest.   They have always been first presented and payment refused, and are then delivered over for protest.   (Chitty on Bills, 13th ed., 457.)

The only practical benefit to any one is the notice of the dishonor to the prior parties to the bill to enable them to protect themselves.   It may possibly at some time be of some importance as evidence of the dishonor.   Whether practically beneficial or not, however, as the law requires it, it must be done.

Conceding the rule at common law to be, in the absence of any custom or usage on the subject, that the presentment and demand must be made by the notary in person, was the testimony offered, of the universal usage in the city of New York for the clerk of the notary to make such presentment and demand, admissible?

It may be remarked that the usage of merchants has established the great body of the law in reference to bills of exchange

It gave grace to such bills, and thus changed the contract. It has settled the particular time of demand by the notary. The rule of law that requires a protest of· a foreign bill is wholly founded upon the custom of merchants. (*Denniston* v. *Stewart, supra.*)

In the absence of any established rule of law in this State, by decision of the court or by any statute, requiring a demand to be made by the notary in person, it is not perceived why a usage such as was approved was not admissible as proof upon the subject. This was the view of the learned justice who tried this case, but he was of opinion that the law had been otherwise settled in this State. In this, I think, he was clearly in error. All the decisions referred to by him or upon the argument at bar were confined to the admissibility of certificates of protest, and notice of bills, and notes under the statute of 1833, p. 395. That statute made no provision as to what constituted a protest, but provided simply what the notary's certificate should *prima facie* prove, and had no reference whatever to the admissibility of this offered evidence or to the duties of notaries at common law in protesting a foreign bill. Such are *Onondaga Co. Bank* v. *Bates* (3 Hill, 53); *Cole* v. *Jessup* (9 Barb., 395; affirmed in this court, 10 N. Y., 96); *Warnick* v. *Crane* (4 Den., 460); *Hunt* v. *Maybee* (7 N. Y., 266); *Gawtry* v. *Doane* (48 Barb., 148). The counsel for the plaintiff, to sustain the exclusion of this evidence, refers to *Chenowith* v. *Chamberlin* (6 B. Monr., 60); *Sacrider* v. *Brown* (3 McLean, 481); *Commercial Bank* v. *Barksdale* (36 Mo., 563, at 573); *Cribbs* v. *Adams* (13 Gray, 597); *Carmichael* v. *Bank of Penn.* (4 How. [Miss.], 567.) Neither case sustains his position. On the contrary, each one that speaks upon this point concedes the admissibility of the evidence and its controlling effect. The last case makes no allusion to the point. The practice in England is to present and demand by a clerk of the notary, and we are not referred to an English authority holding such presentment illegal where the usage so to present was established.

Chitty on Bills, in his last edition (10 Eng. ed., 355, note

4), sustains this usage, and says it is not questioned in any English case, and "is amply justified by the law of principal and agent." I take this from 1 Par. on Bills, 360, as this edition of Chitty is not accessible to me. This is said after correspondence upon and examination and discussion of the subject, and is free from the doubt in other editions, based chiefly upon a doctrine of Mr. Justice BULLER, in *Lefthy* v. *Mills* (4 Tr. R., 175), an action on an inland bill.

In Brookes' Notary of England (3d ed., 71), published in 1867, it is stated "before the protest is made it is the custom in England to cause the bill to be presented either by a notary or by his clerk (in general his clerk presents it), and acceptance to be demanded." As to the admission of usage, see *Nelson* v. *Fotterale* (7 Leigh, 179); *Miltenberger* v. *Spaulding* (33 Mo., 421); *Commercial Bank of Kentucky* v. *Barksdale* (36 id., 573).

It is said that this usage was not known to the plaintiff, and hence could not be obligatory upon it.

A knowledge by plaintiff of this usage was not necessary to its validity. The mode of making presentment and demand was of no sort of moment to the plaintiff. That mode could not have influenced the plaintiff's action. What the law requires as to a foreign bill is a protest, and all that the owner is interested in is that the protest should be legal.

In my judgment the evidence offered was competent, and should have been received. It is suggested that this usage was not admissible, as it was not set up in the answer. The rejection was not put upon that ground, but upon the broad merits. The question of pleading, therefore, is not considered, if there be anything in it, though I confess I do not perceive anything.

It is also urged that this bill was given to the defendant to present on the wrong day. That there was grace upon the bill, and hence it was due on the fourth and seventh of January, and not on the fifth, the day of its delivery for protest. It is probably a sufficient answer to this to say that no such point was raised at the trial. But as a new trial must

be had on other grounds, my brethren think an opinion should be expressed upon this point, as it has been fully discussed and will necessarily arise in the case.

The act, under which the plaintiff claims that grace was abolished, as to this bill, reads as follows : "All bills of exchange, appearing on their face to have been drawn upon any bank or upon a banking association or individual banker carrying on banking business," etc., " which are, on their face, payable on any specified day, or in any number of days after the date or sight thereof, shall be deemed due and payable on the day mentioned for the payment of the same, without any days of grace being allowed," etc. (Laws of 1857, p. 829, § 2.)

Observe ; the bills must not only be payable on a " specified day," or so many " days after date or sight," but they must, " on their face," be so payable.

This language is plain and peculiarly specific. It was obviously designed to be so. Clearly, it intended to abolish grace as to some bills, and not as to others. We must look at its language to learn precisely upon what bills grace was intended to be abolished.

It does not, in terms, include bills payable in *months* or *years* after date ; but it is said that such bills, by calculation, can be converted from *months* or *years* into days, and thus they are included. But this mode abolishes the words, " on their face," so payable. These words, " on their face," are thus rendered superfluous, without meaning. This violates a primary rule of construction. A bill, payable in two years from its date, is not payable, " on its face," in so many days from its date.

Thus, it follows, from the language of the act, that bills, payable " on their face " in so many months or years from date, are not payable, " on their face," in so many days from date. The language of the act is particular and exclusive. What right had a court to make it general and inclusive ? I think the purpose of the act in harmony with its language.

It was intended, I think, to abolish grace upon short-time bills drawn upon banks or bankers. Thus the abolition is

specifically confined to bills drawn on "their face" in days or on a specified day, which are usually short bills. Where the bill says pay on such a day or one day after sight, it did not mean three days thereafter. But the holder should get his money upon such short bills at the day specified.

The construction claimed by the plaintiff would abolish grace upon all time bills on banks or bankers, which was never intended, or it would have been easily expressed.

It is also a rule that statutes, in derogation of the common law, are to be strictly construed. (*Bussing* v. *Bushnell*, 6 Hill, 382; *Rue* v. *Alter*, 5 Denio, 119.) Though I place but little emphasis upon the rule for this construction. The case of *Lefthy* v. *Mills* (4 Tr. R., 170) throws light upon this question. The act there provided for a protest of bills, etc., payable in days "after date;" but the bill drawn was payable "fourteen days after sight," and the court held the statute did not "attach" to such a bill.

In my judgment, the statute of 1857 does not attach to this bill. It follows that it was not due until the 7th of January. It was therefore delivered for protest upon the wrong day. In such case I think the bank committed the error in delivering the bill on the wrong day for protest, and it is liable therefor to the plaintiff. (*Am. Ex. Co.* v. *Haire*, 21 Ind., 4.) The notary was directed by the bank to protest the bill. It virtually decided that there was no grace thereon. The notary is not presumed to be a lawyer who is to revise or reverse the decision of his employer as to the character of the bill, and whether it is entitled to grace or not.

The bills and notes (fifty-two in all) delivered on this day to the defendant as notary, were delivered for protest, not for advice from him as a lawyer. Doubtless the action of the bank misled him.

If the bill was not entitled to grace, it was no doubt protested at the right time, as it is held that such bills are due upon the day following, not preceding a public holiday. (*Salter* v. *Burt*, 20 Wend., 205; *Avery* v. *Stewart*, 2 Conn., 69.)

There are other questions, but as these will dispose of the case it is not important to discuss them.

Judgment should be reversed, new trial granted, costs to abide the event.

Allen, Folger and Rapallo, JJ., concur.

Church, Ch. J., and Grover, J., concur upon first ground.

Judgment reversed.